**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

_____

|  |  |
|---|---|
| ANGELICARE, LLC | ) |
| 3408 Angelique Drive | ) |
| Violet, Louisiana 70092, | ) |
|  | ) |
| and | ) |
|  | ) |
| C. MOORE THERAPEUTIC GROUP | ) |
| HOME, LLC | ) |
| 3008 Rosetta Drive | ) |
| Chalmette, Louisiana 70043, | ) |
|  | ) |
| and | ) |
|  | ) |
| DIONNA RICHARDSON, | ) |
| Sole proprietor of AngeliCare, LLC | ) |
| 3408 Angelique Drive | ) |
| Violet, Louisiana 70092, | ) |
|  | ) |
| and | ) |
|  | ) |
| CATHY MOORE, | ) |
| Sole proprietor of C. Moore, LLC | ) |
| 3008 Rosetta Drive | ) |
| Chalmette, Louisiana 70043, | ) |
|  | ) |
| Plaintiffs, | ) |
|  | ) |
| v. | ) |
|  | ) |
| ST. BERNARD PARISH, LOUISIANA | ) |
|  | ) |
| Serve On: | ) |
| William McGoey, Esq. | ) |
| 8201 W. Judge Perez Drive | ) |
| Chalmette, Louisiana 70043, | ) |
|  | ) |
| and | ) |

THE STATE OF LOUISIANA                )
                                       )
Serve On:                              )
    Jeff Landry, Esq.                  )
    Attorney General                   )
    1885 North Third Street            )
    Baton Rouge, Louisiana 70802,      )
                                       )
        Defendants.               )
_____)

## COMPLAINT

1.      Plaintiffs AngeliCare, LLC ("AngeliCare"), C. Moore Therapeutic Group Home, LLC ("C. Moore"), Dionna Richardson, and Cathy Moore, by and through their attorneys, allege the following:

### I.      INTRODUCTION

2.      There are currently no licensed therapeutic group homes for children with disabilities in St. Bernard Parish.  Thus, when a St. Bernard Parish child with a disability requires 24-hour care in a structured living environment, she must be sent outside the Parish, which makes it more difficult for her to maintain her connections to her community.

3.      To address the gap in care for youth with disabilities in St. Bernard Parish, AngeliCare and C. Moore, through their owners Dionna Richardson and Cathy Moore, respectively, sought to open two therapeutic group homes, each to house five youth with disabilities, in houses they own in the Parish.

4.      However, St. Bernard Parish refused to allow the Plaintiffs to open their group homes by, on information and belief, changing its zoning code to exclude group homes after the Plaintiffs had applied for licenses, by excluding the Plaintiffs' homes on the basis of that new discriminatory zoning code, and by deliberately refusing to grant reasonable modifications to that code.

2

5.      The State of Louisiana, through the Louisiana Department of Health, denied the Plaintiffs licenses to operate their therapeutic group homes because the proposed homes were allegedly in violation of state regulations that require that therapeutic group homes be in compliance and conformity with local zoning.  The State of Louisiana also refused to hold the licensing applications open pending the Plaintiffs' discrimination claims against St. Bernard Parish.

6.      The Plaintiffs were never able to open their proposed therapeutic group homes.

7.      St. Bernard Parish's discriminatory zoning code and repeated refusal to permit AngeliCare and C. Moore to open and operate group homes violate the federal Fair Housing Act, 42 U.S.C. § 3601, *et seq*. and its implementing regulations at 24 C.F.R. § Part 100, the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq*. and its implementing regulations at 28 C.F.R. § Part 35, and Section 504 of the Rehabilitation Act of 1973, 28 U.S.C. § 794 and its implementing regulations at 24 C.F.R. § Part 8.  The Parish's discriminatory zoning code and denial of zoning relief and of a reasonable accommodation also violate Louisiana state law, including the Louisiana Equal Housing Opportunity Act, La. R.S. 51:2606, and the state public accommodations law, La. R.S. 51:2247.

8.       The State ratified and incorporated the Parish's discrimination by basing its licensing decisions on St. Bernard Parish's discriminatory actions and refused to reasonably accommodate the Plaintiffs by delaying final action on the Plaintiffs' licenses pending their discrimination complaints against St. Bernard Parish.

9.      The Plaintiffs have suffered damage as a result of the actions of St. Bernard Parish and the State, including lost profits, attorneys' fees, emotional distress, and the inability to obtain state licensure for their group homes.  The Parish's refusal to allow the Plaintiffs to

operate their group homes, and the State's associated denial of licensure for the homes, have also denied children with disabilities in St. Bernard Parish and elsewhere in Louisiana the opportunity to enjoy equal access to housing.

10.     The Plaintiffs seek declaratory, preliminary, and permanent injunctive relief to enjoin the Defendants' conduct, as well as monetary damages, costs, and reasonable attorneys' fees.

## II.     JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction of Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331.

12.     Plaintiffs' claims for relief are authorized by 28 U.S.C. § 1343, the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, and Federal Rules of Civil Procedure 57 and 65.

13.     This action arises in part under the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, the Americans with Disabilities Act, 42 U.S.C. § 12132, *et seq.*, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

14.     Venue is proper in the Eastern District of Louisiana under 28 U.S.C. § 1391 because all acts complained of occurred in this district.

## III.     PARTIES

15.     AngeliCare, LLC is a Louisiana limited liability corporation formed in 2015.  It owns a single-family dwelling located at 3408 Angelique Drive, Violet, Louisiana, 70092. AngeliCare was formed in order operate a therapeutic group home and provide community-based services to five children with mental and emotional disabilities in a residential setting.

16.     Dionna Richardson is the sole owner of AngeliCare LLC.  Ms. Richardson is, and at all times relevant to this matter was, a resident of St. Bernard Parish, Louisiana.

17.     C. Moore Therapeutic Group Home, LLC is a Louisiana limited liability corporation formed in 2015.  It owns a single-family dwelling located at 3008 Rosetta Drive, Chalmette, Louisiana, 70043.  C. Moore was formed in order to operate a therapeutic group home and provide community-based services to five children with mental and emotional disabilities in a residential setting.

18.     Cathy Moore is the sole owner of C. Moore Therapeutic Group Home, LLC.  Ms. Moore is, and at all times relevant to this matter was, a resident of St. Bernard Parish, Louisiana.

19.     St. Bernard Parish, Louisiana is a local governmental entity located within the Eastern District of Louisiana.  St. Bernard Parish operates under a Home Rule Charter governed by the St. Bernard Parish Council.  The Parish is responsible for the acts of its agents and employees, and is responsible for the enforcement of its zoning code and its ordinances.  The Parish is a public entity under the Fair Housing Act and the Americans with Disabilities Act, a recipient of federal financial assistance under Section 504 of the Rehabilitation Act, and a place of public accommodation under La. R.S. 51:2232.

20.     Defendant the State of Louisiana is a public entity under the Fair Housing Act and the Americans with Disabilities Act, a recipient of federal financial assistance under Section 504 of the Rehabilitation Act, and a place of public accommodation under La. R.S. 51:2232.

## IV.     STATUTORY AND REGULATORY FRAMEWORK

21.     In 1988, Congress amended the Fair Housing Act ("FHA") to extend the guarantee of fair housing to "handicapped" individuals.  *See* 42 U.S.C. § 3604(f).  Congress authorized the Secretary of the United States Department of Housing and Urban Development to promulgate regulations to implement the FHA.  *See* 42 U.S.C. § 3614a.

22.     Under the FHA, the term "handicap" means, with respect to a person, a "physical or mental impairment which substantially limits one or more of such person's major life activities, a record of such an impairment, or being regarded as having such an impairment." 42 U.S.C. § 3602(h).  The term "physical or mental impairment" includes "[a]ny mental or psychological disorder, such as…emotional or mental illness."  24 C.F.R. § 100.201.  "Major life activities" include "functions such as caring for one's self."  *Id*.

23.     The FHA makes it unlawful to discriminate against or otherwise make unavailable or deny a dwelling to any buyer or renter because of a handicap of that buyer, renter, or person residing in or intending to reside in that dwelling after it is sold, rented, or made available.  42 U.S.C. § 3604(f)(1).

24.     The FHA further provides that it is unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of the handicap of that person or persons residing in or intending to reside in that dwelling after it is sold, rented, or made available. 42 U.S.C. § 3604(f)(2)(B).

25.     The FHA further provides that it is unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of the handicap of any person associated with the buyer or renter.  42 U.S.C. § 3604(f)(2)(C).

26.     Under the FHA, discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."  42 U.S.C. § 3604(f)(3)(B).

27.     The federal regulations implementing the FHA specifically prohibit enacting or implementing land-use rules, ordinances, policies, or procedures that restrict or deny housing opportunities or otherwise make unavailable or deny dwellings to persons because of handicap. 24 C.F.R. § 100.70(d)(5).

28.     The federal regulations implementing the FHA further make it unlawful, because of handicap, "to restrict or attempt to restrict the choices of a person by word or conduct in connection with seeking, negotiating for, buying or renting a dwelling so as to . . . discourage or obstruct choices in a community, neighborhood or development."  24 C.F.R. § 100.70(a).

29.     Title II of the Americans with Disabilities Act ("ADA") requires that no qualified individual with a disability[1] shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.  42 U.S.C. § 12132.

30.     Under the ADA, a disability is defined as "a physical or mental impairment that substantially limits one or more major life activities, … a record of such an impairment, … [or] being regarded as having such an impairment."  42 U.S.C.A. § 12102(1).  The term "physical or mental impairment" includes "[a]ny mental or psychological disorder, such as…emotional or mental illness."  28 C.F.R. § 35.108(b)(ii).  "Major life activities" include "functions such as Caring for oneself, … sleeping, … speaking, … learning, reading, concentrating, thinking, … communicating, interacting with others…; and (ii) The operation of a *major bodily function*,

---

[1] Under the ADA, a disability is defined in the same way that the FHA defines a handicap. *Oxford House, Inc. v. City of Baton Rouge, La.*, 932 F. Supp. 2d 683, 688 (M.D. La. 2013).  This Complaint uses the terms handicap and disability interchangeably.

such as the functions of the … neurological, brain, … systems…." *Id*. § 35.108(c) (emphasis in original).

31.     Under the ADA, a public entity includes "any State or local government," and "any department, agency, special purpose district, or other instrumentality of a State or States or local government."  42 U.S.C.A. § 12131(1).

32.     The federal regulations implementing Title II of the ADA provide, inter alia, that "[a] public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of disability—

(i) Deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service;

(ii) Afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;

(iii) Provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others;

(v) Aid or perpetuate discrimination against a qualified individual with a disability by providing significant assistance to an agency, organization, or person that discriminates on the basis of disability in providing any aid, benefit, or service to beneficiaries of the public entity's program;

 (vii) Otherwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service."

28 C.F.R. § 35.130(b)(1).

33.     The federal regulations implementing Title II of the ADA prohibit a public entity, directly or through contractual or other arrangements, from "utilize[ing] criteria or methods of administration—

(i) That have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability; or

(ii) That have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities."

28 C.F.R. § 35.130(b)(3).

34.    The federal regulations implementing Title II of the ADA provide that a public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.   28 C.F.R. § 35.130(b)(7).

35.    The federal regulations implementing Title II of the ADA provide that a public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered.  28 C.F.R. § 35.130(b)(8).

36.    The federal regulations implementing Title II of the ADA require that a public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities.  28 C.F.R. § 35.130(d).

37.    The federal regulations implementing Title II of the ADA provide that a public entity shall not exclude or otherwise deny equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association.  28 C.F.R. § 35.130(g).

38.    The federal regulations implementing the ADA prohibit a public entity from administering a licensing program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability, and a public entity may not establish requirements for

the programs or activities of licensees that subject qualified individuals with disabilities to discrimination on the basis of disability.  28 C.F.R. § 35.130(6).

39.     Recipients of federal financial assistance – including Community Development Block Grants and other funding from the U.S. Department of Housing and Urban Development – are subject to Section 504 of the Rehabilitation Act of 1973 ("Section 504"), which mandates that no individual with a disability "be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance" because of her disability.  29 U.S.C. § 794(a).  As recipients of federal financial assistance, St. Bernard Parish and the State of Louisiana must comply with Section 504 and its implementing regulations.

40.     The federal regulations implementing Section 504 define an "individual with handicaps" as "any person who has a physical or mental impairment that substantially limits one or more major life activities; has a record of such an impairment; or is regarded as having such an impairment."  24 C.F.R. § 8.3.  The term "physical or mental impairment" includes "[a]ny mental or psychological disorder, such as…emotional or mental illness."  *Id*.  "Major life activities" include "functions such as caring for one's self."  *Id* .

41.     The federal regulations implementing Section 504 make it unlawful to "[d]eny a dwelling to an otherwise qualified buyer or renter because of a handicap of that buyer or renter or a person residing in or intending and eligible to reside in that dwelling after it is sold, rented or made available."  24 C.F.R. § 8.4(b)(1)(vii).

42.     Under the federal regulations implementing Section 504, recipients of federal financial assistance may not deny individuals with disabilities the benefit of housing, aid, benefits, or services, or afford the opportunity to benefit from housing, aid, benefits, or services

10

in a manner unequal to the opportunity provided to others.  24. C.F.R. § 8.4(b)(1).  Similarly, a recipient of federal financial assistance may not "[p]rovide different or separate housing, aid, benefits, or services to individuals with handicaps or to any class of individuals with handicaps from that provided to others," "deny a dwelling to an otherwise qualified buyer or renter because of the handicap of that buyer or renter or a person residing in or intending and eligible to reside in that dwelling after it is sold, rented, or made available," or otherwise limit a qualified individual with handicaps in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the housing, aid, benefit, or service.  *Id*.

43.     The federal regulations implementing Section 504 also provide that "a recipient may not … utilize criteria or other methods of administration the purpose or effect of which would (i) subject qualified individuals with handicaps to discrimination … [or] (ii) defeat or substantially impair the accomplishment of the objectives of the recipient's federally assisted program or activity for qualified individuals with a particular handicap involved in the program or activity, unless the recipient can demonstrate that the criteria or methods of administration are manifestly related to the accomplishment of an objective of a program or activity."  24 C.F.R. § 8.4(b)(4).

44.     The federal regulations implementing Section 504 also require that recipients of federal financial assistance "administer programs and activities receiving Federal financial assistance in the most integrated setting appropriate to the needs of qualified individuals with handicaps."  24 C.F.R. § 8.4(d).

45.     Under Section 504, recipients of federal financial assistance must grant reasonable accommodations to qualified individuals with handicaps in order for them to have

11

meaningful access to the benefits of a covered program.  *See Alexander v. Choate*, 469 U.S. 287, 301 (1985); *Prewitt v. U.S. Postal Serv.*, 662 F.2d 292, 308 (5th Cir. 1981).

46.     An entity's obligation to comply with Section 504 and its regulations "is not obviated or alleviated by any State or local law or other requirement that, based on handicap, imposes inconsistent or contradictory prohibitions or limits upon the eligibility of qualified individuals with handicaps to receive services."  24 C.F.R. § 8.4(e).

47.     The Louisiana Equal Housing Opportunity Act ("LEHOA") declares that "[i]t is the policy of the state of Louisiana to provide, within state and federal constitutional limitations, for fair and equal housing opportunity throughout the state."  La. Stat. Ann. § 51:2602(c). Accordingly, the legislature has decreed that "[a]ll persons should…be able to compete for available housing on an open, fair, and equitable basis, regardless of…disability[.]"  La. Stat. Ann. § 51:2602(a).

48.     The definition of "disability" in the LEHOA mirrors that in the FHA, ADA, and Section 504, with disability meaning "[a] physical or mental impairment which substantially limits one or more of such person's major life activities."  La. Stat. Ann. § 51:2603(5).

49.     The LEHOA tracks the FHA in making it unlawful to discriminate against or otherwise make unavailable or deny a dwelling to any buyer or renter because of the disability of that buyer, renter, or person residing in or intending to reside in that dwelling after it is sold, rented, or made available.  La. R.S. 51:2606(A)(6)(a).

50.     Also like the FHA, the LEHOA prohibits discrimination against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of the handicap of that person or persons

residing in or intending to reside in that dwelling after it is sold, rented, or made available.  La. R.S. 51:2606(A)(6)(b).

51.     Under the LEHOA, the failure to grant a reasonable accommodation in rules, policies, practices, or services, when such accommodation is necessary to afford a person with a disability an equal opportunity to use and enjoy a dwelling, constitutes discrimination.  La. R.S. 51:2606(A)(6)(c).

52.     The Louisiana public accommodations law defines "disability" in line with the FHA, the ADA, Section 504, and the LEHOA.  La. R.S. 51:2232(3).

53.     A "place of public accommodation, resort, or amusement" includes a "place, store, or other establishment…which is supported directly or indirectly by government funds." La. R.S. 51:2232(9).

54.     The law also defines a "[d]iscriminatory practice in connection with public accommodations" to mean "any direct or indirect act or practice of exclusion, distinction, restriction, segregation, limitation, refusal, denial, or any other act or practice of differentiation or preference in the treatment of a person or persons because of…disability[.]"  La. R.S. 51:2232(5).

55.     Under the Louisiana public accommodations law, it is a discriminatory practice to deny a person the full and equal enjoyment of any services, privileges, or advantages of a place of public accommodation on the grounds of disability.  La. Stat. Ann. § 51:2247.

## V.      STATEMENT OF FACTS

### A.  St. Bernard Parish's Discriminatory Actions

56.     The State of Louisiana, through the Louisiana Department of Health ("LDH"), has created a Therapeutic Group Home program for children with disabilities.  The LDH Health

Standards Section licenses each group home as a facility that provides community-based residential services in a homelike setting under the supervision and oversight of a professional staffperson.  La. Admin. Code. Ch. 48 § 6201(B).  The supervising practitioner of a TGH must be either a psychiatrist or a psychologist.  *Id*. § 6249.

57.     LDH refers eligible clients under the age of 21 who are determined to need psychiatric or psychological services to licensed group homes.  *Id*. § 6201(B).  Each group home provides an array of services, clinical treatment and related services, including psychiatric supports, integration with community resources, and skill building, while providing its residents with a structured and supportive living environment 24 hours per day, seven days per week.  *Id*. § 6201(B)-(C).  A group home allows a client to maintain her connection to her community, yet receive and participate in a more intensive level of treatment, with 24-hour care and services.  *Id*. § 6201(D).

58.     Ms. Richardson, and Ms. Moore, as the owners of AngeliCare and C. Moore, respectively, obtained financing to renovate and operate therapeutic group homes, purchased required services such as fire insurance and unemployment insurance, undertook renovations to meet the physical and structural requirements to operate group homes, and obtained permits from St. Bernard Parish for those renovations.

59.     On December 7, 2015 and March 11, 2016, respectively, AngeliCare and C. Moore applied to the LDH for therapeutic group home licenses.  The LDH issued a provisional license to AngeliCare on June 13, 2016.

60.     The houses owned by AngeliCare and C. Moore are located in areas zoned as R-1.

61.     When the Plaintiffs began their efforts to open their group homes and applied for their licenses, the St. Bernard Parish zoning code provisions for residential zones made no

mention of group homes.  On information and belief, group homes were allowed in the zones in which the Plaintiffs' homes were located.

62.     On April 12, 2016, Dionna Richardson and Cathy Moore, the owners, respectively, of AngeliCare and C. Moore, each received an Order to Cease and Desist from St. Bernard Parish.  The Orders accused Ms. Richardson and Ms. Moore of violating the St. Bernard Parish Code of Ordinances by: (1) using a single-family residential R-1 zoned property for commercial activities; (2) lacking a required zoning compliance letter from the St. Bernard Parish Office of Community Development for operation of a business (Adult Residential Care Facility); (3) lacking a required zoning permit from the St. Bernard Parish Office of Community Development for operation of a business (Adult Residential Care Facility); and (4) lacking a required occupational license from St. Bernard Parish for operation of a business (Adult Residential Care Facility).[2]

63.     At the time of the Cease and Desist order, the St. Bernard Parish zoning code did not mention group homes or prohibit them from R-1 zones.

64.     Ms. Richardson and Ms. Moore immediately contacted Perry Nicosia, the St. Bernard Parish District Attorney, to determine how to respond to the Orders to Cease and Desist and move forward with opening their group homes.  Mr. Nicosia helped them to schedule a meeting with William M. McGoey, the Parish Legal Counsel, and Jason Stopa, the Director of the Parish Office of Community Development.

---

[2] Though both AngeliCare and C. Moore sought to operate group homes for children, the Orders to Cease and Desist mistakenly identified the planned businesses as adult residential care facilities.

65.     At the meeting with Mr. McGoey and Mr. Stopa, which took place in April 2016, they advised Ms. Richardson and Ms. Moore that the Parish does not permit group homes in residential subdivisions zoned R-1 (single-family) at all, and not in subdivisions zoned R-2 (two-family) "as of right."  Thus, AngeliCare and C. Moore would have to request zoning changes of their properties from R-1 to R-2, and then request conditional use permits to operate their group homes at the planned locations.

66.     Ms. Richardson and Ms. Moore made the zoning change requests recommended by Mr. McGoey and Mr. Stopa on May 23 and 24, 2016, respectively.

67.     On May 24, 2016, the St. Bernard Parish Planning Commission recommended approval of amendments to the Parish zoning code regarding group homes.  The amendments included definitions of "large" and "small" group homes, restrictions forbidding group homes from locating in R-1 residential districts and only permitting them in R-2 districts as a conditional use, and regulations regarding the number of parking spaces group homes must have.

68.     On June 10, 2016, the Parish sent Ms. Richardson and Ms. Moore notice that a hearing regarding their zoning change requests was scheduled before the Planning Commission on June 28, 2016.

69.     On June 21, 2016, the St. Bernard Parish Council voted to accept the Planning Commission's recommendations and amend the Parish zoning code to include regulations regarding group homes.

70.     The new St. Bernard Parish zoning code discriminatorily prohibits group homes for people with disabilities from R-1 residential zones.  The St. Bernard Parish zoning code only permits group homes in R-2 residential zones as a conditional use and in R-3 residential zones as of right.

16

71.     In St. Bernard Parish, the majority of the residential zones are zoned R-1.  In comparison, there are very few R-2 and R-3 zones.  Thus, there are fewer choices of locations for individuals with disabilities in a group home in the Parish under the zoning code than are available for a home for individuals without disabilities.

72.     At its June 28, 2016 meeting, the Planning Commission tabled the Plaintiffs' zoning change requests to do further research, and the requests were considered at the next Commission meeting, held July 26, 2016.

73.     For the July 26, 2016 meeting, Department of Community Development staff submitted reports regarding both AngeliCare and C. Moore, which informed the Planning Commission, *inter alia*, that "[t]he staff believes that an adolescent group home at this location will not generate additional traffic demands onto Angelique Drive and the adjacent minor roadways.  The staff does not expect a significant inconvenience to area residences as a result of daily site operations."  The Project Analysis also stated, "[t]he staff believes adequate infrastructure is in place for this activity," "[t]he staff believes there is no natural resource conservation issues associated with this project," "[t]he staff does not believe that public health, safety and welfare would be negatively impacted as result of this project," "staff does not anticipate significant environmental or operational impacts to adjacent and surrounding residential developments with regard to its proposed use," and "allowing a zoning change to R-2 (Two-Family Residential) at the requested location[s] [would] not have a significant impact of adjacent land uses in excess of existing conditions."

74.     At the conclusion of the reports, the Department of Community Development staff made no recommendation regarding the Plaintiffs' zoning change requests, and stated that the requests "could be addressed by means of reasonable accommodations of group homes for

the treatment of people with disabilities in lieu of a zoning change." Thus, the staff recommended that "the Parish Council review how reasonable accommodations for group homes for the disabled could be handled more appropriately through a reasonable accommodation procedure."

75.     At the July 26, 2016 Planning Commission meeting, a Department of Community Development staff member reported that, in the interim between the two Planning Commission meetings, they had researched the LDH therapeutic group home program and the law regarding group homes and reasonable accommodation procedures. The staff had also reached out to adjacent parishes to determine how they address group homes and reasonable accommodations within their zoning codes.

76.     The same staff member reported that if the residents of Ms. Richardson's and Ms. Moore's group homes are disabled under the FHA and ADA, the Parish would be required to reasonably accommodate them, and that having a six-person or less group home in an R-1 zone would be reasonable.

77.     At the same meeting on July 26, Planning Commission members voiced a belief that property values around the AngeliCare and C. Moore properties would go down if the Plaintiffs were permitted to locate group homes on the properties. The Planning Commission then voted to recommend to the Parish Council a denial of the Plaintiffs' zoning change applications.

78.     On August 2 and 16, 2016, the Plaintiffs' zoning change requests were considered by the St. Bernard Parish Council. At the August 2 meeting, Glen Petersen, the attorney representing the Plaintiffs, provided the Council with a detailed letter explaining the FHA and its requirements. Mr. Petersen informed the Council that the youth who would live in the

AngeliCare and C. Moore group homes are disabled under the FHA and the ADA, and that federal law mandates that the Parish make reasonable accommodations for this type of group home. Mr. Petersen also informed the Parish Council about a federal lawsuit in which the City of Baton Rouge was held liable for not granting zoning relief to a group home for disabled persons.

79. Councilman Richard Lewis accused Mr. Petersen of trying to bully and threaten St. Bernard Parish by citing the Baton Rouge lawsuit, and stated that the Council had attorneys who would advise them regarding their decision.

80. The Parish Council then voted to introduce the Plaintiffs' zoning requests for a public hearing and vote that would take place on August 16, 2016.

81. At the August 16 hearing, members of the public spoke in support of and against zoning relief for the Plaintiffs. More than one resident expressed opposition to the group homes because of a belief that their presence in R-1 subdivisions would lower property values.

82. Councilman Lewis spoke at the hearing about the fair housing issues surrounding the zoning change requests. Councilman Lewis made clear that he and the Parish Council understood that the FHA and ADA required reasonable accommodations for the Plaintiffs' group homes. Councilman Lewis, however, moved to table the matter for 30 days so that the Council could speak to a representative from the U.S. Department of Housing and Urban Development and to an attorney well-versed in fair housing law, and the Council voted to table the Plaintiffs' requests until the next Parish Council meeting on September 20, 2016.

83. Despite the Parish Planning Commission staff's testimony about the requirement to provide reasonable accommodation by allowing the Plaintiffs' group homes in an R-1 zone, and despite Councilman Lewis' testimony about the requirements of the FHA and ADA, at the

Parish Council meeting on September 20, 2016, the Parish Council denied the Plaintiffs' applications for zoning relief.

84.     During the September 20 meeting, members of the public again voiced their opinions regarding the Plaintiffs' requests for zoning relief.  Comments from the public included: "Can't they put it somewhere else?"; "We're taxpayers, this is our neighborhood"; and, "This group home has nothing in common with any single-family residential house in this neighborhood."

85.     Also at the September 20 meeting, Ms. Richardson explained the reasonable accommodation mandate of the FHA for the Council, and Mr. Petersen again spoke to the Council about the FHA and the ADA.  Kelsey Meeks, a lawyer representing residents who were opposed to the Council granting zoning relief to the Plaintiffs, stated that the FHA "does not mean that no rules apply," and that the Plaintiffs still must follow state and local law in determining where to locate their group homes.

86.     At the end of the public comment period at the September 20 hearing, Councilman Nathan Gorbaty stated for the record that he planned to vote against granting zoning relief to the Plaintiffs because the Parish zoning set up for businesses such as group homes is not in R-1 residential zones, and that the Plaintiffs could operate in R-2 or R-3 zones and not change the neighborhoods.  He also stated that many residents had come out and spoken on the matter, and "when the residents come out and speak about it, we really take that to heart, because that truly shows they care about what happens in their neighborhoods."  Councilman Lewis also spoke, and said that the Plaintiffs should have worked with the Parish Department of Community Development to locate an appropriate location for their group homes, as local law requires.

87.     The Parish Council then voted to deny the Plaintiffs' applications for zoning relief.

88.     After their requests were denied, Ms. Richardson and Ms. Moore each made a formal written request to St. Bernard Parish for a reasonable accommodation for AngeliCare and C. Moore, respectively, via an October 6, 2017 letter from their attorney, Glen Petersen, to Mr. McGoey, Mr. Stopa, and Perry M. Nicosia, the St. Bernard Parish District Attorney.  The letter requested that the Parish offer the Plaintiffs "reasonable accommodations from the standpoint of any necessary zoning waivers or permits that may be necessary in order for them to open their respective doors for business."

89.     The following day, October 7, 2016, Mr. McGoey sent Mr. Petersen a letter stating that the Parish had drafted a reasonable accommodation ordinance that would be introduced at the next Parish Council meeting on October 18, 2016.  The Parish never responded in substance to Mr. Petersen's October 6 reasonable accommodation requests on behalf of the Plaintiffs.

90.     The St. Bernard Parish Council adopted a reasonable accommodation ordinance, Ordinance SBPC #1830-11-16, on November 2, 2016.  Pursuant to the ordinance, on November 28, 2016, AngeliCare and C. Moore each submitted an "Application for Request for Reasonable Accommodation."  The applications both made clear that the Plaintiffs were seeking to operate therapeutic group homes for children with mental and behavioral disabilities in R-1 subdivisions.

91.     Four days later, in letters sent December 2, 2016, Mr. Stopa, on behalf of the St. Bernard Parish Department of Community Development, denied both AngeliCare's and C. Moore's reasonable accommodation requests purportedly because:  (1) AngeliCare and C. Moore had not provided evidence that the prospective residents of the group homes have disabilities; (2)

there was no connection between the stated disabilities of the group home residents and the major life activity that is substantially affected; and (3) there was not a clear connection that the minor residents have a disability that affects one or more major life activities.

92.     In accord with the Parish's reasonable accommodation ordinance, on December 9, 2016, Ms. Richardson and Ms. Moore requested an appeal of the denial of the Plaintiffs' reasonable accommodation requests. The St. Bernard Parish Board of Zoning and Adjustments ("BZA") heard their appeals at a hearing held January 5, 2017.

93.     At that hearing, a representative of the Plaintiffs provided information to the BZA regarding the procedure the Plaintiffs would use to ensure that any child accepted to live at the AngeliCare or C. Moore group homes would be disabled pursuant to the FHA and the ADA.  As the Plaintiffs' representative told the BZA, the Plaintiffs' policies and procedures manuals outlined the forms necessary to document disability, and how medical providers would do so.  In particular, upon initial assessment of a new client, the clinician would be required to complete and sign a Disability Determination Form that would collect the necessary evidence of disability, including information on the client profile, diagnosis, medical summary, functional limitations, and impairments, as well as the clinician's credentials and signature.  The Plaintiffs also provided copies of the Evidence of Disability Policy and Disability Determination Form to the BZA.  The Plaintiffs' representative told the BZA that a "compliance file" would be created for each resident containing documentation of their disabilities, and that these compliance files would be available to the Parish should the Parish wish to review them and ensure that the group home residents were disabled pursuant to federal law.

94.     Also at the January 5 hearing, Earl Dauterive, a member of the St. Bernard Parish Planning Commission, testified that the use sought by AngeliCare and C. Moore – a group home

– did not fit the property, because the properties were zoned for single-family dwellings, but "[t]his is a group home of individuals who are not related."  Mr. Dauterive stated that when the Parish denied AngeliCare and C. Moore a reasonable accommodation, "they should've tried to seek some R-2 or R-3 properties that are available in St. Bernard Parish.  As far as reasonable accommodations go, that is their reasonable accommodation."  Mr. Dauterive noted that, "if you look at the zoning map, there's plenty of R-2 and R-3 properties out there available."

95.     The BZA tabled AngeliCare's and C. Moore's reasonable accommodation appeals on January 5 until a subsequent hearing held February 2, 2017.

96.     At the February 2, 2017 hearing Karen Sweeney, chair of the BZA, stated the reasons she believed the BZA should deny the Plaintiffs' appeals.  First, she stated that a "business this large" would have a lot of people and vehicles going in and out of the house, "twenty-four seven."

97.     Ms. Sweeney also said that BZA members had concerns regarding how many children would be sleeping in a two- or three-bedroom house with adults.

98.     Ms. Sweeney listed the evidence the Plaintiffs had provided of their disability policies and procedures, and the testimony the BZA had received on these matters, but then stated that the BZA had not received any evidence relating to AngeliCare and C. Moore's prospective residents' disabilities.

99.     Finally, Ms. Sweeney summarized the law the BZA had researched and why the law did not require that the BZA grant the Plaintiffs' reasonable accommodation requests:

> The Board does not really have a lot of experience dealing with disabilities, and with the governing boards of these disability children.  But we did do some research and the state and local governments both state that group homes automatically get a reasonable accommodation in residential neighborhoods but multi-residential neighborhoods like R-2's.  It also appears that the federal housing act states that group homes must be allowed in residential areas.  It does

23

not state that it has to be R-1's, it just says residential areas.  So St. Bernard Parish has already given these group homes permission to house in residential areas.  So as a Board we just need to decide whether…these owners should be allowed or not allowed, but…this request seems more of a convenience for these business owners rather than a proper place.  It's not really beneficial to the neighborhoods or the children who are going to be living there.

100.     After Ms. Sweeney spoke at the February 2 meeting, another BZA member gave his reasons for denying the Plaintiffs' appeals:

We're really up here to accommodate people who have hardships….These people have not, in my opinion, have not presented any type of hardship.  We have accommodations in R-2 and R-3 where they could have put this group home, or whatever you want to call it, and the hardship is not that they don't have a spot to put it, the hardship is that they started doing it without really reading the rules.  And that's not a hardship to me…ignorance of the law does not allow you to have hardship.

101.     The BZA then voted to deny the Plaintiffs' appeals.

102.     St. Bernard Parish was required to hire a Fair Housing Coordinator pursuant to a May 10, 2013 consent decree with the U.S. Department of Justice.[3]  On information and belief, St. Bernard Parish did not involve its Fair Housing Coordinator in the consideration of AngeliCare's and C. Moore's zoning and reasonable accommodation requests.

**B.  The State's Discrimination**

103.     On August 3, 2016, Ms. Richardson sent an email to Cecile D. Castello, RN, Director of the LDH Health Standards Section, asking for "[a]ny help you can give on the State's position on matters like this," in regards to the Plaintiffs' requests to St. Bernard Parish for zoning changes to the AngeliCare and C. Moore properties.

---

[3] *See United States v. St. Bernard Parish*, No. 2:12-CV-00321 (E.D. La. May 10, 2013), *available at* https://www.justice.gov/sites/default/files/crt/legacy/2013/05/13/stbernardsettle.pdf.

104.    Ms. Castello responded that "the Therapeutic Group Home regulations do not stipulate for city/parish zoning ordinances, permits and/or codes.  I can only offer you what our regulations state."

105.    On December 5, 2016, after the Parish denied the Plaintiffs' reasonable accommodation requests, Mr. Petersen sent an email to Ms. Castello asking for "a letter advising me that clients forwarded to the [therapeutic group homes] are screened by the State and deemed mentally handicapped per the ADA guidelines."  Mr. Petersen said that the Parish was "essentially questioning whether these clients are disabled," and that "[o]ur response should be that we would not be receiving them from the State if they were not."

106.    Ms. Castello responded to Mr. Petersen that "[w]e, as a regulatory agency cannot step in on this any further than supplying what we supply to the public," and included a link to the therapeutic group home webpage and a screenshot of the same.

107.    On February 27, 2017, Ms. Castello sent a letter via certified mail to Ms. Richardson stating that the LDH had permitted AngeliCare's initial provisional therapeutic group home license to expire pursuant to the Louisiana Administrative Code, Title 48, Part I, Chapter 62, § 6237(b)(1), which requires that the governing body of a therapeutic group home ensure that the home is in compliance with all relevant local and municipal laws and regulations.  Because St. Bernard Parish had refused to permit AngeliCare to operate and provide services in an R-1 zone, the LDH determined that AngeliCare was out of compliance with local zoning law.

108.    On March 1, 2017, Ms. Castello sent a similar letter via certified mail to Ms. Moore stating that the LDH had denied C. Moore an initial license to operate a therapeutic group home based on St. Bernard Parish's refusal to permit C. Moore to operate and provide services in

an R-1 zone. Thus, as with AngeliCare, the LDH determined that C. Moore was out of compliance with local zoning law.

109.    The Plaintiffs appealed the LDH's decisions to the Division of Administrative Law ("DAL"). On April 26, 2017, the DAL denied AngeliCare's appeal on the basis that it was untimely. On May 1, 2017, AngeliCare requested reconsideration of the order denying its administrative appeal, but the DAL denied its request for reconsideration on May 26, 2017.

110.    On June 6, 2017, the DAL held that it did not have jurisdiction to adjudicate C. Moore's claims that the LDH had incorporated St. Bernard Parish's discrimination by basing its licensing decision on the Parish's discriminatory acts. On June 20, 2017, the DAL granted the State's motion for judgment on the pleadings in C. Moore's appeal, holding that the LDH had correctly denied C. Moore's license under the licensing regulations requiring compliance with local laws and regulations.

111.    Thus, although AngeliCare and C. Moore satisfied all of the financial, administrative, and regulatory requirements of therapeutic group home licensure, because they did not have local zoning approval, the State did not grant them licenses to operate therapeutic group homes and failed to accommodate them by awaiting completion of their discrimination claims against St. Bernard Parish.

112.    State law governing therapeutic group homes requires that they "be located in a residential community to facilitate community integration through public education, recreation, and maintenance of family connections." 48 La. Admin. Code Pt I, § 6285(A). Therapeutic group homes must also provide a living setting that "more closely resemble[s] normal family existence than would be possible in a larger facility or institution." *Id*. § 6285(B).

113.     St. Bernard Parish blocked the Plaintiffs' efforts to comply with these state mandates by adopting and enforcing a post-hoc discriminatory zoning code, and the LDH then incorporated that discrimination by penalizing the Plaintiffs for not abiding by zoning regulations that discriminate against the children that the therapeutic group home program is supposed to assist.

### C.  The Effect of the Defendants' Discrimination

114.     St. Bernard Parish's new zoning code discriminates against persons with disabilities by only permitting group homes for the disabled in R-2 zones as a conditional use, and not permitting them in R-1 zones at all.

115.     St. Bernard Parish's new zoning code also has a disparate impact on persons with disabilities because it only permits group homes for the disabled as of right in R-3 zones and as a conditional use in R-2 zones, but there are significantly fewer R-2 and R-3 zones within the Parish than R-1 zones.

116.     St. Bernard Parish intentionally discriminated against the Plaintiffs because the prospective residents of their group homes are youth with disabilities.

117.     The State of Louisiana ratified and incorporated the Parish's discrimination by denying the Plaintiffs therapeutic group homes licenses because they had allegedly not complied with the Parish's new discriminatory zoning code.

118.     The Defendants' actions have prevented AngeliCare and C. Moore from opening their doors, accepting residents, and operating group homes in houses zoned for single-family use in St. Bernard Parish.

119.    The Plaintiffs have been injured by the discriminatory conduct of St. Bernard Parish, which has caused them damages, including emotional distress, economic loss, and a loss of civil rights.

120.    The Defendants' discriminatory actions have denied needed housing opportunities to children with disabilities in St. Bernard Parish.  As a result of the Defendants' actions, prospective residents of the Plaintiffs' group homes must move away from St. Bernard Parish, or even out of Louisiana, to receive housing and disability-related services, thus interfering with their right to integrated housing and services.

121.    The Defendants' discriminatory actions have also limited the housing opportunities of unrelated disabled persons.  St. Bernard Parish's new zoning code denies such people the right to live together as a group in any residential R-1 district, and limits their right to live together in any residential R-2 district within the Parish, while not similarly limiting the housing opportunities of other unrelated groups of people.  The Parish thus subjects groups of disabled persons to more stringent zoning requirements than any other group of unrelated persons.  The State reinforces this discrimination by requiring therapeutic group homes, and the disabled children they serve, to comply with St. Bernard Parish's new discriminatory zoning code.

**D.  St. Bernard Parish's Intentional Discrimination**

122.    On information and belief, St. Bernard Parish issued a Cease and Desist order to the Plaintiffs at a time when its zoning code allowed group homes in R-1 zones.  Thereafter, the Parish adopted its facially discriminatory zoning code and refused to allow zoning changes or reasonable accommodations based on prejudice against the prospective residents' disabilities.

123.     St. Bernard Parish is well aware of the FHA and its requirements.  Prior to the Parish Council denying the Plaintiffs' requests, the Parish Department of Community Development reported that it was researching the applicable FHA and ADA requirements.  At the Council meeting on July 26, 2016, Parish staff reported that it would be a reasonable accommodation to allow a group home for six or fewer children with disabilities in the Plaintiffs' locations.

124.     Between 2006 and 2013, the Parish was a defendant in a series of civil rights lawsuits alleging that in the wake of Hurricane Katrina, the Parish passed multiple ordinances and engaged in conduct that had the intent and effect of denying and making rental housing in the Parish unavailable on the basis of race and national origin, in violation of the FHA.  *See*, *e.g.*, *Greater New Orleans Fair Housing Action Center, et al. v. St. Bernard Parish, et al.*, No. 2:06-cv-7185-HGB-SS (E.D. La. 2006); *Greater New Orleans Fair Housing Action Center v. St. Bernard Parish, et al.*, No. 2:11-cv-00858-HGB-SS (E.D. La. 2011).

125.     On February 27, 2008, a consent order was entered in Case No. 2:06-cv-7185, permanently enjoining the Parish from re-enacting the discriminatory ordinances at issue in that matter.  In the consent order, St. Bernard Parish agreed to abide by the FHA.  The consent order had a term of three years.

126.     In 2009 alone, the Court held St. Bernard Parish in contempt three times for violating the February 27, 2008 consent order and the FHA.  The Court again held the Parish in contempt in 2011, and in total awarded the plaintiffs in that case money judgments for attorneys' fees and costs totaling approximately $2.1 million.

127.     In 2012, the United States filed suit against St. Bernard Parish to enjoin its multi-year campaign to limit rental housing opportunities in the Parish on the bases of race and

national origin.  *See United States v. St. Bernard Parish*, No. 2:12-cv-00321-HGB-SS (E.D. La. 2012).

128.    On May 10, 2013, the United States and the Parish entered into a settlement agreement with a term of three years.[4]  The settlement imposed a variety of requirements on St. Bernard Parish, including: (1) that all Parish Council members and all Planning Commission members undergo fair housing training; (2) that the Parish annually provide all staff members or employees of the office of Community Development, the Parish President, all staff members or employees of the Office of Housing and Redevelopment, all members, staff, or employees of the Parish Planning Commission, and all staff members and employees of the Parish Resident Services and Compliance Department with in-person training on the requirements of the FHA; (3) that the Parish establish an Office of Fair Housing with a full-time Fair Housing Coordinator who would be responsible for promoting fair housing in the Parish; and (4) that the Parish pay damages to private plaintiffs in related cases and a civil penalty to the United States.

129.    The consent orders and settlement agreements to which St. Bernard Parish has been subject over the last decade, and the training Parish officials and staff have undergone, demonstrate that St. Bernard Parish is well aware of federal fair housing requirements and its duty to refrain from discrimination.  Yet St. Bernard Parish persists in adopting and enforcing discriminatory zoning ordinances and pursuing actions that violate the fair housing rights of Louisiana citizens.

130.    Mr. Dauterive's testimony at the January 5, 2016 BZA hearing is just one example of the Parish's disregard for its obligations under federal law.  Mr. Dauterive – a

---

[4] *See* Note 3, *supra*.

member of the Planning Commission who, upon information and belief, received the fair housing training required by the settlement agreement between St. Bernard Parish and the United States – testified that AngeliCare and C. Moore could obtain a reasonable accommodation by buying properties zoned R-2 or R-3 and locating their TGHs there.  The reasonable accommodation mandate is an empty promise to persons with disabilities if it merely requires that those persons, or persons or entities associated with them, go elsewhere to find housing when the housing of their choice is made unavailable.  Yet that is how St. Bernard Parish has chosen to interpret its federal obligations.

131.    Without swift and strong action from this Court, St. Bernard Parish will continue to flagrantly disregard the fair housing and equal opportunity rights of persons with disabilities and the entities who seek to serve them.

## VI.    CLAIMS FOR RELIEF

### COUNT I

### Fair Housing Act, 42 U.S.C. § 3601, *et seq.*
### (Against All Defendants)

132.    The Plaintiffs re-allege and incorporate herein by reference all preceding paragraphs.

133.    The Plaintiffs are "aggrieved persons" as defined by 42 U.S.C. § 3602(i).

134.    Plaintiffs' therapeutic group homes are intended to provide housing and services to persons with handicaps, as defined by 42 U.S.C. § 3602(h).

135.    By pretextually ordering the Plaintiffs to cease and desist their preparations to open group homes, changing its zoning ordinance to restrict placement of group homes after the Plaintiffs sought to open, enforcing its new facially discriminatory zoning ordinance, denying the

31

Plaintiffs' requests for zoning relief, and refusing to make reasonable accommodations to its zoning ordinance necessary to allow Plaintiffs to operate housing for people with disabilities, the Defendant, St. Bernard Parish, has:

a. Adopted and enforced a zoning ordinance that discriminates against persons with disabilities by only permitting group homes in R-2 residential zones if the operators obtain conditional use permits, and not permitting them in R-1 residential zones at all, in violation of 24 C.F.R. § 100.70(d)(5); and

b. Enforced a zoning ordinance that has a disparate impact on persons with disabilities by only permitting group homes in R-3 zones as of right and in R-2 residential zones if the operators obtain conditional use permits, and not permitting them in R-1 residential zones at all, where the majority of the residential zones in St. Bernard Parish are zoned R-1, in violation of  42 U.S.C. § 3604(a); and

c. Made unavailable the housing owned by the Plaintiffs to the potential residents of their group homes because they are persons with disabilities, in violation of 42 U.S.C. § 3604(f)(1) ; and

d. Discriminated in the provision of services in connection with the group homes because the potential residents of the group homes are persons with disabilities, in violation of 42 U.S.C. § 3604(f)(2); and

e. Failed or refused to make reasonable accommodations in rules, policies, practices, or services when such accommodations are necessary to afford persons with disabilities an equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. § 3604(f)(3)(B);

32

    f.    Restricted or attempted to restrict the choices of a person so as to discourage or obstruct choices in a community, neighborhood or development, in violation of 24 C.F.R. § 100.70(a); and

    g.    Denied the Plaintiffs' requests for a zoning variance because of discriminatory animus against persons with disabilities, in violation of 42 U.S.C. § 3604(f) and 24 C.F.R. § 100.70(d)(5).

136.    By denying therapeutic group home licenses to the Plaintiffs on the basis of St. Bernard Parish's discriminatory actions and failing to make reasonable accommodations to the licensing process, Defendant the State of Louisiana has:

    a.    Made unavailable the housing owned by the Plaintiffs to the potential residents of their group homes because they are persons with disabilities, in violation of 42 U.S.C. § 3604(f)(1); and

    b.    Discriminated in the provision of services in connection with the group homes because the potential residents of the group homes are persons with disabilities, in violation of 42 U.S.C. § 3604(f)(2); and

    c.    Restricted or attempted to restrict the choices of a person so as to discourage or obstruct choices in a community, neighborhood or development, in violation of 24 C.F.R. § 100.70(a); and

    d.    Failed or refused to make reasonable accommodations in rules, policies, practices, or services when such accommodations are necessary to afford persons with disabilities an equal opportunity to use and enjoy a dwelling, in violation of 42 U.S.C. § 3604(f)(3)(B).

## COUNT II

### Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, *et seq.*
### (Against All Defendants)

137.     The Plaintiffs re-allege and incorporate herein by reference all preceding paragraphs.

138.     The Plaintiffs are associated with and/or attempting to provide housing and services to people with disabilities, as defined in 42 U.S.C. § 12102(2).

139.     The Defendants, St. Bernard Parish and the State of Louisiana, are public entities under 42 U.S.C. § 12131(1).

140.     St. Bernard Parish, through its actions described above, has:

   a.   Discriminated against qualified individuals with disabilities, in violation of 42 U.S.C. § 12132 and 28 C.F.R. § 35.130; and

   b.   Failed to make a reasonable modification to its policies, practices, or procedures necessary to avoid discrimination against persons with disabilities, in violation of 42 U.S.C. § 12132 and 28 C.F.R. § 35.130(b)(7); and

   c.   Denied the prospective residents of the AngeliCare and C. Moore group homes an opportunity to participate in a program in the most integrated setting appropriate to their needs, in violation of 28 C.F.R. § 35.130(d); and

   d.   Utilized zoning requirements that are not imposed upon other groups of related or unrelated non-disabled persons to deny Plaintiffs, because of the disabilities of the prospective residents of the AngeliCare and C. Moore group homes, the enjoyment of their civil rights, in violation of 28 C.F.R. § 35.130(b).

141.     The State of Louisiana, through its actions described above, has:

a.  Administered the therapeutic group home licensing program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability, and established requirements for therapeutic group homes that subject qualified individuals with disabilities to discrimination on the basis of disability, in violation of 28 C.F.R. § 35.130(6); and

b.  Aided or perpetuated discrimination against qualified individuals with disabilities by providing significant assistance to St. Bernard Parish, an entity that discriminates on the basis of disability in providing aids, benefits, or services to beneficiaries of its programs, in violation of 28 C.F.R. § 35.130(b)(1)(v); and

c.  Denied the prospective residents of the AngeliCare and C. Moore therapeutic group homes an opportunity to participate in a program in the most integrated setting appropriate to their needs, in violation of 28 C.F.R. § 35.130(d); and

d.  Failed to make a reasonable modification to its policies, practices, or procedures necessary to avoid discrimination against persons with disabilities, in violation of 42 U.S.C. § 12132 and 28 C.F.R. § 35.130(b)(7).

## COUNT III

### Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a)
### (Against All Defendants)

142.   Plaintiffs re-allege and incorporate herein by reference all preceding paragraphs.

143.   The Plaintiffs are associated with and/or attempting to provide housing and services to individuals with handicaps, as defined in 24 C.F.R. § 8.3.

144.   The Defendants are recipients of federal financial assistance within the meaning of Section 504 of the Rehabilitation Act.  See 29 U.S.C.A. § 794.

145.   St. Bernard Parish, through its actions described above, has:

35

a. Discriminated against persons with disabilities by denying the Plaintiffs' requested zoning variances and refusing to make reasonable accommodations or modifications to its zoning code, in violation of 29 U.S.C. § 794(a); and

b. Failed to make a reasonable accommodation or modification in its policies and practices when necessary to avoid discrimination, in violation of 29 U.S.C. § 794(a); and

c. Denied housing to the potential residents of the AngeliCare and C. Moore group homes because they are persons with disabilities, in violation of 24 C.F.R. § 8.4(a) and (b)(1)(vii); and

d. Utilized zoning requirements that are not imposed upon other groups of related or unrelated non-disabled persons in a manner that denies the prospective residents of the AngeliCare and C. Moore groups homes an equal opportunity to benefit from the housing, aid, benefits, or services of St. Bernard Parish, in violation of 24. C.F.R. § 8.4(b)(1)(ii); and

e. Denied housing to AngeliCare and C. Moore because the prospective residents of their group homes are persons with disabilities, in violation of 24 C.F.R. § 8.4(b)(1)(vii); and

f. Limited the prospective residents of the AngeliCare and C. Moore group homes in the enjoyment of rights, privileges, advantages, or opportunities enjoyed by others receiving the housing, aid, benefit, or services of St. Bernard Parish, in violation of 24. C.F.R. § 8.4(b)(1)(viii); and

g.   Denied the prospective residents of the AngeliCare and C. Moore group homes an opportunity to participate in a program in the most integrated setting appropriate to their needs, in violation of 24 C.F.R. § 8.4(d).

146.   The State of Louisiana, through its actions described above, has:

a.   Limited the prospective residents of the AngeliCare and C. Moore group homes in the enjoyment of rights, privileges, advantages, or opportunities enjoyed by others receiving the housing, aid, benefit, or services of the State, in violation of 24. C.F.R. § 8.4(b)(1)(viii); and

b.   Denied the prospective residents of the AngeliCare and C. Moore group homes an opportunity to participate in the therapeutic group home program in the most integrated setting appropriate to their needs, in violation of 24 C.F.R. § 8.4(d); and

c.   Utilized criteria or other methods of administration of the therapeutic group home program, the effect of which defeats or substantially impairs the accomplishment of the objectives of the State's therapeutic group home program for children with disabilities involved in the program, in violation of 24 C.F.R. § 8.4(b)(4); and

d.   Failed to make a reasonable accommodation or modification in its policies and practices when necessary to avoid discrimination, in violation of 29 U.S.C. § 794(a).

## **COUNT IV**

### **Louisiana Equal Housing Opportunity Act, La. R.S. 51:2606**
### **(Against All Defendants)**

147.   The Plaintiffs re-allege and incorporate herein by reference all preceding paragraphs.

148.    The Plaintiffs are "aggrieved persons," as defined in La. Stat. Ann. § 51:2603(1).

149.    The Plaintiffs are associated with and/or attempting to provide housing to people with disabilities, as defined in La. Stat. Ann. § 51:2603(5).

150.    By adopting and enforcing its zoning ordinance for group homes, denying the Plaintiffs' requests for zoning relief, and refusing to make reasonable accommodations to its zoning ordinance necessary to allow Plaintiffs to operate housing for people with disabilities, the Defendant, St. Bernard Parish, has:

    a.   Adopted and enforced a zoning ordinance that discriminates against persons with disabilities by only permitting group homes in R-2 residential zones if the operators obtain conditional use permits, and not permitting them in R-1 residential zones at all, in violation of La. R.S. 51:2606(A)(6)(a); and

    b.   Made unavailable the housing owned by the Plaintiffs to the potential residents of their group homes because they are persons with disabilities, in violation of La. R.S. 51:2606(A)(6)(a); and

    c.   Discriminated in the provision of services in connection with the group homes because the potential residents of the group homes are persons with disabilities, in violation of La. R.S. 51:2606(A)(6)(b); and

    d.   Failed or refused to make reasonable accommodations in rules, policies, practices, or services when such accommodations may have been necessary to afford persons with disabilities an equal opportunity to use and enjoy a dwelling, in violation of La. R.S. 51:2606(c)(ii); and

e. Denied Plaintiffs' requests for a zoning variance because of discriminatory animus against persons with disabilities, in violation of La. R.S. 51:2606(A)(6)(a)(ii).

151. By denying therapeutic group home licenses to the Plaintiffs on the basis of St. Bernard Parish's discriminatory actions, Defendant the State of Louisiana has:

a. Made unavailable the housing owned by the Plaintiffs to the potential residents of their group homes because they are persons with disabilities, in violation of La. R.S. 51:2606(A)(6)(a); and

b. Discriminated in the provision of services in connection with the group homes because the potential residents of the group homes are persons with disabilities, in violation of La. R.S. 51:2606(A)(6)(b); and

c. Failed or refused to make reasonable accommodations in rules, policies, practices, or services when such accommodations may have been necessary to afford persons with disabilities an equal opportunity to use and enjoy a dwelling, in violation of La. R.S. 51:2606(c)(ii).

## COUNT V

### La. R.S. 51:2231, *et seq.*
**(Against All Defendants)**

152. The Plaintiffs re-allege and incorporate herein by reference all preceding paragraphs.

153. The Plaintiffs are associated with and/or attempting to provide housing and services to people with disabilities, as defined in La. Stat. Ann. § 51:2232(3).

154.    The Defendants, St. Bernard Parish and the State of Louisiana, are "place[s] of public accommodation" under La. Stat. Ann. § 51:2232(9) because they are "supported directly or indirectly by government funds."

155.    The Plaintiffs are associated with and/or attempting to provide housing to people with disabilities, as defined in La. R.S. 51:2232(3).

156.    The Defendant, St. Bernard Parish, through its actions described above, has:

  a.    Enacted and enforced a zoning code that only permits group homes for individuals with disabilities in R-2 residential zones if the operators obtain conditional use permits, and not permitting them in R-1 residential zones at all, thus excluding, restricting, and segregating individuals on the basis of disability, in violation of La. R.S. 51:2232(5) and La. R.S. 51:2247; and

  b.    Utilized zoning requirements that are not imposed upon other groups of related or unrelated non-disabled persons, thereby committing "an act or practice of differentiation or preference in the treatment of…persons because of…disability," in violation of 51:2232(5) and La. R.S. 51:2247; and

  c.    Discriminated against the Plaintiffs by denying them the full and equal enjoyment of the services, privileges, and advantages of St. Bernard Parish on the grounds of disability, in violation of La. R.S. 51:2247.

157.    The Defendant, the State of Louisiana, by denying therapeutic group home licenses to the Plaintiffs on the basis of St. Bernard Parish's discriminatory actions, has:

  a.    Committed "an act or practice of differentiation or preference in the treatment of…persons because of…disability," in violation of 51:2232(5) and La. R.S. 51:2247; and

b.  Discriminated against the Plaintiffs by denying them the full and equal enjoyment of the services, privileges, and advantages of the State on the grounds of disability, in violation of La. R.S. 51:2247.

## RELIEF SOUGHT AS TO ALL COUNTS

**WHEREFORE**, Plaintiffs pray that the Court award them the following relief:

a.  Declare that the Defendants' actions described above constitute violations of the Fair Housing Act, the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, the Louisiana Equal Housing Opportunity Act, and the Louisiana public accommodations law;

b.  Enjoin the Defendants, their agents, employees, assigns, successors, and all other persons in active concert or participation with them from discriminating on the basis of disability, in violation of the Fair Housing Act, Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, the Louisiana Equal Housing Opportunity Act, and the Louisiana public accommodations law;

c.  Enjoin the Defendants, their agents, employees, assigns, successors, and all persons in active concert or participation with them from refusing to permit the operation of the AngeliCare and C. Moore therapeutic group homes;

d.  Require the Defendants, their agents, employees, assigns, successors, and all other persons in active concert or participation with them to make reasonable accommodations in their policies, practices, rules, or services for the Plaintiffs' group homes and their prospective residents, as required by the Fair

Housing Act, the Americans with Disabilities Act, Section 504 of the

Rehabilitation Act, and the Louisiana Equal Housing Opportunity Act;

e. Award the Plaintiffs compensatory damages for their out-of-pocket losses,

emotional damages, and other economic harms caused by the Defendant's

discriminatory conduct;

f. Award the Plaintiffs punitive damages in an amount to be determined at trial

that would punish Defendants for their intentional, malicious, willful, callous,

wanton, and reckless disregard for the Plaintiffs' rights, and would effectively

deter the Defendants from engaging in similar conduct in the future;

g. Award the Plaintiffs special damages;

h. Award the Plaintiffs their reasonable attorneys' fees and costs incurred in this

action pursuant to 42 U.S.C. §§ 3613(c)(2) and 12205, 28 C.F.R. § 35.175,

and 29 U.S.C. § 794a(b);

i. Order such other relief as the Court deems just, proper, and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby request a jury trial for all claims for which a jury is permitted.

Dated: August 1, 2017

Respectfully submitted,


   /s/ Eve L. Hill
Eve L. Hill, Trial Attorney
(ehill@browngold.com)
*Application for Pro Hac Vice to be filed*
Jean M. Zachariasiewicz
(jmz@browngold.com)
*Application for Pro Hac Vice to be filed*

BROWN, GOLDSTEIN & LEVY, LLP
120 E. Baltimore St., Suite 1700
Baltimore, MD  21202
Tel.: (410) 962-1030 (office)
        (202) 802-0925 (Eve L. Hill mobile)
Fax: (410) 385-0869


_____/s/_____
John Adcock
(jnadcock@gmail.com)
Louisiana Bar No. 30372
P.O. Box 750621
New Orleans, LA 70175
Tel: (504) 233-3125
Fax: (504) 322-3843

*Attorneys for Plaintiffs*