UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ANGELICARE, LLC, ET AL.      *     CIVIL ACTION NO. 17-7360
                              *
                              *     SECTION: "A"(1)
VERSUS                             *
                              *     JUDGE: JAY C. ZAINEY
ST. BERNARD PARISH, ET AL.      *
                              *     MAGISTRATE JUDGE
                              *     JANIS VAN MEERVELD
************************************** *

<u>ORDER AND REASONS</u>

Before the Court is the Motion to Compel filed by Plaintiffs Angelicare, LLC, C. Moore Therapeutic Group Home, LLC, Dionna Richardson, and Cathy Moore. (Rec. Doc. 96). For the following reasons, the Motion is GRANTED in part and DENIED in part.

<u>Background</u>

The plaintiffs in this case, AngeliCare, LLC ("Angelicare"), C. Moore Therapeutic Group Home, LLC ("C. Moore"), Dionna Richardson, and Cathy Moore (together, the "Plaintiffs"), sought to open two therapeutic group homes in St. Bernard Parish, Louisiana, to each house five youth with disabilities pursuant to a Louisiana Department of Health ("LDH") program. The Plaintiffs were not able to obtain the licenses required to do so. In this lawsuit, they allege that St. Bernard Parish changed its zoning code to exclude group homes after Plaintiffs applied for their licenses, excluded the Plaintiffs' homes on the basis of the new zoning code, and deliberately refused to grant reasonable modifications to that code. Plaintiffs argue that the actions of St. Bernard Parish and the State of Louisiana (in denying Plaintiffs licenses because of Plaintiffs' failure to comply with local zoning requirements) violate the Fair Housing Act ("FHA"), the Americans with Disabilities Act ("ADA"), and the Louisiana Equal Housing Opportunity Act, by

1

discriminating against Plaintiffs based on the disability of the future inhabitants of the facilities, and for failing to grant a reasonable accommodation.

For purposes of the motion to compel before the Court, the following allegations do not appear to be in dispute. Angelicare, LLC, ("Angelicare") and C. Moore Therapeutic Group Home, LLC ("C. Moore") applied to LDH for therapeutic group home licenses in late 2015 and early 2016, respectively. The properties at issue are located in St. Bernard Parish and zoned as R-1. Plaintiffs believe that at the time they applied for LDH licenses, operation of group homes was allowed in zone R-1. On April 12, 2016, Richardson and Moore received Orders to Cease and Desist from St. Bernard Parish. They were accused of using a single family residential R-1 zoned property for commercial activities and lacking a required zoning compliance letter, zoning permit, and occupational license from the St. Bernard Parish Office of Community Development. Moore and Richardson met with St. Bernard Parish legal counsel William M. McGoey and the Director of the Parish Office of Community Development, Jason Stopa, and learned that they would need to request zoning changes of their properties from R-1 to R-2 (two-family) and then request conditional use permits to operate their group homes at the planned locations. Richardson and Moore made the zoning change requests on May 23, 2016, and May 24, 2016, respectively. The Parish describes the requests as "spot zone" requests to change the property zone from R-1 to R-2.

On May 24, 2016, the St. Bernard Parish Planning Commissioner recommended approval of amendments to the Parish zoning code regarding group homes to add definitions of "large" and "small" group homes, to forbid group homes in R-1 zones, to permit group homes only in R-2 zones as a conditional use, and to add regulations regarding the number of parking spaces group

homes must have. On June 21, 2016, the St. Bernard Parish Council voted to accept the referenced Planning Commission recommendations.

A hearing regarding Richardson and Moore's zoning change requests was set before the Planning Commission on June 28, 2016, but the matter was tabled until July 26, 2016, so that further research could be performed. At the July 26, 2016, meeting, the Planning Commission voted to recommend to the Parish Council that the Plaintiffs' zoning change applications be denied.

The Parish Council considered the Plaintiffs' zoning change request, at an August 2, 2016, meeting, where Glen Peterson, an attorney representing the Plaintiffs, provided a letter of the same date to the Council. It appears that Peterson also spoke at the meeting. As described by the Plaintiffs in their Complaint, Peterson explained the FHA and the ADA, informed the Council that the residents of the proposed group homes are disabled and the Parish must make reasonable accommodations for this type of group home, and informed the Council about a federal lawsuit in which the City of Baton Rouge was held liable for not granting zoning relief to a group home for disabled persons. In the meeting, Councilman Richard Lewis accused Peterson of threatening litigation against the Parish by citing the Baton Rouge lawsuit. The August 2, 2016, letter does not reference the Baton Rouge litigation. In closing, it states that "We respectfully suggest that St. Bernard Parish's refusal to allow these group homes to assimilate into the local community is in fact the very type of discrimination noted here." (Rec. Doc. 96-21). The Council voted to introduce the zoning request for public hearing and vote at a meeting set for August 16, 2016.

On August 15, 2016, Parish Legal Counsel McGoey issued a letter to the Councilmembers. The letter is described on the Parish's privilege log as a letter from McGoey to the Parish Council "providing legal analysis of statutory and jurisprudential authorities (created in anticipation of litigation)." (Rec. Doc. 96-16). At the August 16, 2016, meeting, members of the public spoke in

favor and against the Plaintiffs' zoning change applications. The Council tabled Plaintiffs' applications until the September 20, 2016, Parish Council meeting. Towards the end of the August 16, 2016, meeting, the Council went into executive session "to discuss Potential Litigation between St. Bernard Parish Government and Dionna Richardson" and "to discuss Potential Litigation between St. Bernard Parish Government and Cathy Moore" Upon return to the regular session, the meeting minutes reflect that "On motion of Mr. Lewis, seconded by Mr. Gorbaty, it was moved to accept the advice of Legal Counsel in the matter of Potential Litigation between St. Bernard Parish Government and Dionna Richardson" Similarly, "it was moved to accept the advice of Legal Counsel in the matter of Potential Litigation between St. Bernard Parish Government and Cathy Moore."

At the September 20, 2016, Parish Council meeting, the Council voted to deny Plaintiffs' applications. On October 6, 2016, Peterson sent a letter on behalf of Richardson and Moore requesting a reasonable accommodation for Angelicare and C.Moore. McGoey sent a letter to Peterson on October 7, 2016, stating that the Parish had drafted a reasonable accommodation ordinance that would be introduced at the October 18, 2016, Parish Council meeting. The reasonable accommodation ordinance was adopted on November 2, 2016. Angelicare and C. Moore each submitted an "Application for request for Reasonable Accommodation" pursuant to the new ordinance on November 28, 2016. Their applications were denied by the St. Bernard Parish Department of Community Development ("DCD") in letters dated December 2, 2016. Moore and Richardson each requested an appeal, and a hearing on the appeals was held by the St. Bernard Parish Board of Zoning and Adjustments ("BZA") on January 5, 2017. The reasonable accommodation appeals were tabled until the BZA's February 2, 2017 hearing, at which the BZA voted to deny Plaintiffs' appeals.

At issue in this Motion to Compel are Plaintiffs' requests for (1) the deposition of McGoey regarding his advice to the Council in the Executive Session of the August 16, 2016 meeting, (2) the depositions of Parish Councilmembers regarding the August 16, 2016 executive session, the facts and intent behind their decision to accept the legal advice of counsel on August 16, 2016, and their decision to amend the Parish zoning ordinance with regard to group homes on May 24, 2016, (3) the production of any documents withheld based on legislative or executive privilege regarding the Council's denial of Plaintiffs' requests for zoning changes or reasonable accommodation, (4) the production of McGoey's August 15, 2016, letter. Plaintiffs say they also wish to depose the Councilmembers regarding their decision to deny Plaintiffs' request for reasonable accommodations. However, it appears this decision was made by the BZA and not the Council. In reply, Plaintiffs explain that they consider the zoning change request to be a reasonable accommodation request, insisting that the Parish knew the Plaintiffs sought to open group homes for disabled children and desired some form of variance from the zoning code to do so.

The Parish opposes these requests, arguing that the sought after communications are protected by various privileges.

## Law and Analysis

1. *Executive Session Privilege as to August 16, 2016, Executive Session.*

Plaintiffs argue that the executive session privilege does not apply to the August 16, 2016, Executive Session because confidentiality of executive sessions does not create a protection from discovery, because even if a privilege exists it is a state law privilege not available in this federal question case, and because even if a privilege recognizable in this case existed for executive sessions, the executive session was not properly called. The Court addresses each argument below

*a. Whether Executive Session Materials are Protected from Discovery*

First, Plaintiffs argue that Louisiana law regarding confidentiality of executive sessions does not create a protection from discovery. However, as the Parish points out, a 2009 Louisiana Attorney General Opinion provides that "[A]ny records maintained by public bodies of executive sessions held pursuant to La. R.S. 42:6.1 and/or La. R.S. 46:1073 would not be subject to disclosure under the Public Records Act." La. Att'y Gen. Op. No. 09-0048 (Apr. 29, 2009). This indicates records of executive session would also be protected from discovery. The case cited by the Plaintiffs was issued more than ten years earlier by the Louisiana Fourth Circuit Court of Appeals, which held that "the fact that some matters may be discussed in executive session does not render the School Board's discussions and actions taken in executive session privileged." Connick v. Brechtel, 98-0543 (La. App. 4 Cir. 4/22/98), 713 So. 2d 583, 587, writ denied, 98-1404 (La. 6/3/98), 720 So. 2d 1202. There do not appear to be any cases invoking an "executive session" privilege to protect executive session communications from disclosure during discovery following the Attorney General's opinion regarding the Public Records Act. However, the Court has found a case in this district holding that the executive session privilege protected from discovery communications made during an executive session like the one here regarding prospective litigation. Marcus v. St. Tammany Par. Sch. Bd., No. CIV. A. 95-3140, 1996 WL 467295, at *1 (E.D. La. Aug. 15, 1996). Like the court in Marcus, the Court finds that the confidentiality of executive sessions would be meaningless if the records of executive sessions could be discovered without limit during civil litigation. See id. ("It would completely eviscerate the exception provided in La.Rev.Stat. § 42:6(A)(2) to rule that a plaintiff could discover "'factual statements,' but not anything else, made during an executive session."). The Executive Session at issue here raises additional privilege issues because counsel was involved (an issue discussed further in

Section 2, *infra*). Thus the Court finds that, at least as to executive sessions like the one here, which concerned prospective litigation, *see* Section 1(c), *supra*, an executive session privilege provides a protection from discovery.

### b. *Whether Federal Court Recognizes Executive Session Privilege*

Second, Plaintiffs argue that even if confidentiality of executive session creates a protection from discovery, this is a state law privilege that does not apply in federal litigation. <u>See United States v. Zolin</u>, 491 U.S. 554, 562 (1989) (quoting Fed. R. Evid. 501) ("Questions of privilege that arise in the course of the adjudication of federal rights are "governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."). Defendants fail to substantively address this argument, suggesting instead that Plaintiffs cannot rely on the open meetings law and argue it is inapplicable. But the only reason the Plaintiffs have raised the open meetings law is in response to the Parish invoking the executive session portion of it.

Plaintiffs' premise that the federal common law regarding privileges applies here is correct. However, it is not clear that federal common law would not recognize the executive session privilege. As noted, the <u>Marcus</u> case in this district applied Louisiana's executive session privilege to an executive session like the one at issue here. The Court does not now hold that calling an executive session would, in all cases, protect communications from discovery. However, under the facts here, the Court finds sufficient support to hold that the executive session privilege applies in this Court to protect the Executive Session at issue here.

### c. *Whether Executive Session was Properly Called Such that Executive Session Privilege is Available*

Third, Plaintiffs argue that even if a federally recognized privilege is available, the Parish has not met the conditions here because the executive session was not properly called. They

correctly point out that Louisiana's open meetings law allows the calling of an executive session for "strategy sessions or negotiations with respect to . . . prospective litigation after formal written demand . . . when an open meeting would have a detrimental effect on the bargaining or litigating position of the public body." La. Rev. Stat. § 42:17(A)(2). Plaintiffs insist that the Open Meetings Law must be liberally construed in favor of public disclosure. See Norris v. Monroe City Sch. Bd., 580 So. 2d 425, 427 (La. Ct. App. 1991) ("The statute, however, must be liberally construed in favor of assuring that public business is performed in an open and public manner and that citizens are advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy."). Indeed, the Louisiana Constitution requires that "[n]o person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases established by law." La. Const. Ann. art. XII, § 3.

The "formal written demand" cited by the Parish is the August 2, 2016, letter by Peterson. The letter asks the Council to overrule the Planning Commissioner's recommendations and instead approve the group homes. Citing to numerous federal and state disability, accommodation, and discrimination laws, the letter argues that the future residents of the homes are "disabled," and they are protected by the ADA and FHA. (Rec. Doc. 96-21). The letter further argues that the FHA "requires accommodations to be made for disabled individuals to receive the type of fair and reasonable housing" proposed by the Plaintiffs. It states that it is "unlawful for local governments to utilize land use zoning policies to keep persons with disabilities from locating to their area." It specifically cautions that: "We respectfully suggest that St. Bernard Parish's refusal to allow these group homes to assimilate into the local community is in fact the very type of discrimination noted here." The Plaintiffs' Complaint alleges that during the August 2, 2016 meeting where Peterson delivered the letter to the Council, Peterson also informed the Council about a lawsuit in Baton

Rouge and that councilman Lewis interpreted this as a threat of litigation. But, the letter itself does not explicitly refer to litigation.

The Plaintiffs say the letter does not amount to a formal written demand, and that, even if it did, the Parish has not established that an open meeting regarding Plaintiffs' reasonable accommodation requests would have a detrimental effect on the Parish's litigating position. The Parish argues that the Council interpreted the letter as a demand and that is why they convened an executive session. The Parish further argues that the Council need not establish that discussing reasonable accommodations would affect their litigation position because the Council was not meeting regarding a reasonable accommodation request, it was meeting regarding Plaintiffs' spot zone request (to change from R-1 to R-2 zone). The Parish adds that discussing Plaintiffs' threatened litigation in front of the Plaintiffs and their counsel would have a detrimental effect on their litigating position.

The Court finds that by citing law stating that an adverse action would violate their rights and demanding that the Council vote in their favor, the Plaintiffs' letter can be construed as a formal written demand. Peterson is a lawyer. The letter was on his firm's letterhead. It referenced that he was representing the Plaintiffs. It alleged discriminatory acts. Certainly the combination of Plaintiffs' letter with Peterson's comments at the August 2, 2016, meeting put the Parish on notice of potential litigation. The fact that the Council consulted with the Parish's attorney and received legal advice at the Executive Session also indicates that the meeting was, in fact, taken into executive session in order to protect the Parish from having their litigation strategy negatively affected by public disclosure. Thus, the Court finds that the August 16, 2016, Executive Session was properly called and any executive session privilege extends to that Executive Session.

### 2. Attorney/Client Privilege with regards to August 16, 2016, meeting

There does not appear to be any dispute that the legal advice provided by McGoey to the Councilmembers with regards to the August 16, 2016, meeting is, absent waiver, protected by the attorney-client privilege. Plaintiffs argue that any attorney-client privilege over the McGoey-Council communications related to the August 16, 2016, meeting has been waived because the Council adopted his advice as public policy. They cite the Council's motion to accept counsel's legal advice. And in reply, they cite statements by Councilmembers during meetings indicating that they were relying on counsel's advice when deciding how to resolve Plaintiffs' zoning requests. For example, at the August 2, 2016, meeting, Councilmember Nathan Gorbaty stated "It may not sound like that big of a deal moving from R-1 to R-2, but it is. . . . From our side, like you said, taking a legal opinion from our legal experts, R-1 to R-2 does make a big deal." (Rec. Doc. 117, at 4). And at the same meeting Councilmember Lewis stated "We also have attorneys that are going to advise us. . . . Anytime you're dealing with fair housing and federal government standards and guidelines, we always get the information from our attorneys before we make a decision." Id. at 5.

The Plaintiffs cite National Council of La Raza v. Department of Justice, where the Second Circuit Court of Appeals held "the attorney-client privilege may not be invoked to protect a document adopted as, or incorporated by reference into, an agency's policy." 411 F.3d 350, 360 (2d Cir. 2005). La Raza concerned a 1996 change in policy at the Department of Justice ("DOJ") to take the position that "state and local law enforcement lacked authority to enforce the civil, as opposed to criminal, provisions of federal immigration law."  Id.  at 353. Id.  Starting in 2002, the Department of Justice instead took "the position that state and local law enforcement could, in fact,

lawfully enforce the civil provisions of immigration law." Id. The 2002 policy change was announced by the Attorney General at a press conference. Id. At the press conference and in two letters, the Attorney General cited the opinion of the DOJ's Office of Legal Counsel ("OLC") as concluding that the policy was legal. Id. Two letters of the Acting Assistant Attorney General and submitted to Congress similarly referred to the OLC opinion regarding the authority of state and local law enforcement. Id. at 354. Counsel to the Attorney General had made a presentation regarding the Office of Legal Counsel's conclusions, stating "the Attorney General did announce the summary of what that opinion is." Id. at 354. In finding the OLC memorandum was not privileged by either the deliberative process privilege or the attorney-client privilege, the Second Circuit concluded that "that the Attorney General and his high-level staff made a practice of using the OLC Memorandum to justify and explain the Department's policy and to assure the public and the very state and local government officials who would be asked to implement the new policy that the policy was legally sound." Id. at 358. The court of appeals found the DOJ had "embraced the OLC's reasoning as its own." Id. It noted that:

> To be sure, had the Department simply adopted only the conclusions of the OLC Memorandum, the district court could not have required that the Memorandum be disclosed. Mere reliance on a document's conclusions does not necessarily involve reliance on a document's analysis; both will ordinarily be needed before a court may properly find adoption or incorporation by reference.

Id.

Here, the meeting minutes reflect that the Councilmembers accepted McGoey's legal advice, but it is unclear what legal advice was adopted. The Council might have been considering whether to retain outside counsel for assistance or whether to set a reserve for litigation costs. Importantly, however, there is no indication that the Council adopted McGoey's legal advice *as a policy*. For example, McGoey's legal advice was not cited as the basis for denying Plaintiffs'

zoning change request. In fact, that decision was not made until the Council voted at the September 20, 2016, meeting. McGoey's legal advice was not cited as the basis for tabling Plaintiffs' zoning change request as this decision was made earlier during the August 16, 2016, meeting. There is no evidence that the Council relied on McGoey's reasoning in accepting his advice or in making any other decision. While the quotes of Councilmembers cited by the Plaintiffs indicate that the Councilmembers intended to obtain legal advice, the statements were made before the legal advice at issue here and cannot reasonably be described as incorporating that future legal advice into a future decision that had not yet been made. If this situation were like La Raza, the Council would have cited McGoey's legal advice as their basis for concluding that their actions on September 20, 2016, were legal. It did not. Based upon the facts before the Court as this time, the Court can find no basis to hold that McGoey's legal advice was adopted as public policy. Accordingly, the Court cannot find the attorney-client privilege was waived on this basis.

3. *Deposition of McGoey, the* <u>Shelton</u> *Standard*

Courts often turn to <u>Shelton v. Am. Motors Corp.</u>, for the standard to determine when opposing counsel can be deposed. Under <u>Shelton</u>, a deposition of opposing counsel can only proceed if (1) there is no other means to obtain the information, (2) the information is relevant and non-privileged, and (3) the information is crucial to preparation of the case. 805 F.2d 1323, 1327 (8th Cir. 1986). The <u>Shelton</u> case concerned a deposition of the opposing party's current, in-house counsel who was involved in defending the claim. <u>Id.</u> The United States Court of Appeals for the Eighth Circuit was concerned that deposing opposing counsel could "disrupt the adversarial system and lower[] the standards of the profession," that it might "add[] to the already burdensome time and costs of litigation" in order to deal with work product an attorney client privilege issues,

and that it would "detract[] from the quality of client representation" because an attorney should not have to fear interrogation by his or her opponent. Id.

Plaintiffs argue that Shelton is inapplicable because McGoey is not attorney of record, has not supervised the trial attorneys, and has not participated in litigation planning or strategy. Moreover, Plaintiffs say, they do not seek to depose McGoey regarding the Parish's litigation strategy, but instead regarding his involvement in the decisions challenged in this lawsuit.

The Court must reject Plaintiffs' argument that Shelton does not apply to McGoey. As the Parish points out, that case has been applied by courts in this Circuit, and it has been applied to in-house counsel. See Premier Dealer Servs., Inc. v. Duhon, No. CIV.A. 12-1498, 2013 WL 5720354, at *4 (E.D. La. Oct. 21, 2013) ("Courts in the Fifth Circuit have applied the three-prong test established by the Eighth Circuit in Shelton v. American Motors Corp., to determine circumstances when in-house counsel should be subject to being deposed."). Indeed, Shelton itself involved in-house counsel. The Parish explains that McGoey is actively involved in this litigation by supervising outside counsel and developing and planning the Parish's litigation strategy. McGoey has submitted a sworn declaration to this effect. McGoey is sufficiently involved in current representation of the Parish that the Court finds it necessary to consider the Shelton factors before allowing his deposition.

It appears at this time that the only matter regarding which the Plaintiffs wish to depose McGoey is the advice he provided to the Council in the Executive Session on August 16, 2016, and his August 15, 2016, letter leading up to that meeting. The Court has found that communication to be privileged. Thus, it is not discoverable (under Shelton or Rule 26).

4. *Legislative Privilege as to Denial of Plaintiffs' Zoning Change Request, Amendment of the Zoning Ordinance, and Amendment of the Reasonable Accommodations Ordinance.*

Plaintiffs say that information about the Councilmembers' motivations in denying Plaintiffs' requests for accommodations is not protected by the legislative privilege because it is not a legislative act. They argue that the Councilmembers were acting in an administrative capacity because they were making decisions specific to the individual Plaintiffs. The Parish seems to concede that as to the September 20, 2016, decision to deny Plaintiffs' zoning change applications, their actions cannot be considered administrative. However, they argue that the Councilmembers' intent is protected by the legislative privilege as to their amendment of the zoning ordinance and the reasonable accommodation ordinance.

"The Supreme Court and several circuit courts have clearly recognized that the doctrine of legislative immunity protects legislative actors from being called to testify about their legislative activities." Cunningham v. Chapel Hill, ISD, 438 F. Supp. 2d 718, 722 (E.D. Tex. 2006). "[T]he privilege applies to any documents or information that contains or involves opinions, motives, recommendations or advice about legislative decisions between legislators or between legislators and their staff." Jackson Mun. Airport Auth. v. Bryant, No. 3:16-CV-246-CWR-FKB, 2017 WL 6520967, at *7 (S.D. Miss. Dec. 19, 2017) (quoting Hall v. Louisiana, No. CIV.A. 12-657-BAJ, 2014 WL 1652791, at *10 (M.D. La. Apr. 23, 2014)).

"Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." Bogan v. Scott-Harris, 523 U.S. 44, 54 (1998). "[I]it is the official function that determines the degree of immunity required, not the status of the acting officer." Marrero v. City of Hialeah, 625 F.2d 499, 508 (5th Cir. 1980). "***Acts of zoning enforcement rather than rulemaking are not legislative***." Crymes v. DeKalb Cty., Ga., 923 F.2d 1482, 1485 (11th Cir. 1991) (emphasis added). "If the facts utilized in making a decision are

specific, rather than general, in nature, then the decision is more likely administrative. Moreover, if the decision impacts specific individuals, rather than the general population, it is more apt to be administrative in nature." Id.

Here, there seems to be consensus that as to the Councilmembers' decision to deny Plaintiffs' specific zoning requests, the Councilmembers are not protected from deposition by the legislate privilege. Accordingly, there appears to be no barrier to deposition of Councilmembers on this matter.

Further, there does not seem to be real disagreement that the Parish Councilmembers were acting in a legislative capacity when amending the zoning ordinance and reasonable accommodation ordinance. The question is whether the circumstances of this case justify allowing discovery into their motivations.

As both parties recognize, the legislative privilege is not absolute. See Jackson Mun. Airport Auth. v. Bryant, No. 3:16-CV-246-CWR-FKB, 2017 WL 6520967, at *4 (S.D. Miss. Dec. 19, 2017). In determining whether the privilege should yield, courts consider "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." Id. at *6 (quoting Rodriguez v. Pataki, 280 F. Supp. 2d 89, 101 (S.D.N.Y.), aff'd, 293 F. Supp. 2d 302 (S.D.N.Y. 2003)).

Plaintiffs argue that the intent of Councilmembers is central to their claims. To prove discrimination, they must show a discriminatory intent or discriminatory effect. Plaintiffs have brought both intent and effect claims. They submit that "proof of a legislative body's discriminatory intent is relevant and extremely important as direct evidence in both types of

claims." Baldus v. Brennan, No. 11-CV-1011 JPS-DPW, 2011 WL 6122542, at *1 (E.D. Wis. Dec. 8, 2011), order clarified, No. 11-CV-1011 JPS-DPW, 2011 WL 6385645 (E.D. Wis. Dec. 20, 2011) (holding that documents or testimony relating to how the legislature reached the decision being challenged was relevant and discoverable). The Parish responds that the Council did not deny Plaintiffs' request for reasonable accommodation and only denied their request for a zoning change (spot zone request). They insist the latter is "barely relevant." The Court disagrees. At this stage, the timing of the amendments to the zoning ordinance regarding group homes and the reasonable accommodation ordinance appear temporally related to Plaintiffs' zoning requests. While the ordinance decisions may have coincidentally occurred around the same time as Plaintiffs' zoning requests,[1] the timing is enough to suggest that the intent of Councilmembers might reveal that they are not only temporally related, but also causally related. Because it appears that the three Council decisions are challenged together and because Plaintiffs are raising a discriminatory intent claim, the Court finds that the Councilmembers' intent is important to resolving Plaintiffs' case.

Plaintiffs argue that the evidence cannot be obtained through other means. They say that the Parish bears the burden to show this is possible. The Parish says other evidence is available to show the motivations of the Parish Council because the meeting minutes and videos of the meetings are publically available. In reply, the Plaintiffs counter that:

> There is little evidence in the public record of the reasons behind the councilmembers' decisions; few of the councilmembers disclosed their thoughts at the relevant public meetings. This is not a case where there are robust committee meeting notes, or written legislative reports, or other in-depth circumstantial evidence of intent; the Council minutes to which Defendant points are bare of any statements of reasoning for the decisions made.

---

[1] There is no argument or evidence presented by the Parish that this was coincidental.

(Rec. Doc. 117, at 8). The Court agrees with the Plaintiffs that the evidence cannot be obtained through other means. The meeting minutes and videos of the meetings here are not a sufficient substitute for the testimony of the Councilmembers.

Plaintiffs argue that claims of discrimination are serious and favor disclosure. The Parish seems to suggest this is just a zoning dispute and not serious. The Court agrees the claims are serious.

Plaintiffs argue that the government played a direct role in causing Plaintiffs' injuries because the Council adopted "a discriminatory zoning ordinance" and refused to grant Plaintiffs reasonable accommodations. The Parish does not address this factor.

Plaintiffs argue that the risk of chilling full and frank deliberations is outweighed by the need for discovery. They refer back to the August 16, 2016, executive session and the "secret deliberations" there. The Parish insists that if Plaintiffs can question Councilmembers regarding their thought processes and motivations, they will be hesitant to have frank discussions in the future. While possibly true, there is a competing concern that the legislative privilege could be used to allow legislators to hide evidence of discriminatory intent. In light of the importance of the Councilmembers' intent to the Plaintiffs' case, the seriousness of their case, and the inability to obtain evidence of intent through other means, the Court finds the Councilmembers can be deposed regarding their zoning ordinance and reasonable accommodation ordinance decisions, in addition to their September 20, 2016, decision to deny Plaintiffs' request for a zoning change. The Court notes that communications protected by the attorney-client privilege are not discoverable as a result of this ruling.

<u>Conclusion</u>

For the foregoing reasons, the Plaintiffs' Motion to Compel (Rec. Doc. 96) is GRANTED in part and DENIED in part. The depositions of the Councilmembers may proceed, except as to privileged communications, including the August 16, 2016, Executive Session and related legal advice. There shall be no deposition of McGoey. The August 15, 2016, McGoey letter shall not be produced.

New Orleans, Louisiana, this 6th day of March, 2018.

Janis van Meerveld
United States Magistrate Judge